274 P.2d 150

**SOLOMON v. ABLES et al.**

**No. 5789.**

Supreme Court of New Mexico.

Aug. 19, 1954.

Rehearing Denied Sept. 27, 1954.

Frazier, Cusack & Snead, Roswell, for appellant.

William Siegenthaler and Willard F. Kitts, Artesia, for appellees.

COMPTON, Justice.

Appellant, plaintiff below, instituted this action to foreclose a real estate mortgage securing an indebtedness of $6147.71 with interest, less a credit of $650, and to have the premises sold to satisfy the indebtedness secured thereby.

The suit was against the mortgagors, R. O. Ables and Letha Ables, also appellees Steve .W. Mason and Ida S. Mason, subsequent purchasers of the premises, and Joe I. Gibbs, a lien claimant, in which it is alleged that default had been made in the payments due on the indebtedness and in the payment of certain insurance premiums. The mortgagors and lien claimant are no longer in the case. Appellees answered in which they denied default either by the makers of the note or themselves as successors in interest. They asserted a crossclaim for $1168.33 alleged to have been paid upon the note by the mortgagors but not credited thereon by appellant. The cause

was tried to the court and judgment was entered dismissing the suit and allowing the additional credit from which the appeal is taken.

The trial court's findings and conclusion being brief, are set out in full:

### Findings of Fact

"1. That the defendant Steve W. Mason and Ida S. Mason were at the time of the filing of this suit entitled to credits upon the indebtedness in question in the total amount of $1818.33.

"2. That they were not delinquent in the payments upon said note at the time the suit was brought, and that they were not otherwise in default in the terms of the mortgage in question at the time of the institution of said suit."

Based upon the foregoing Findings of Fact, the Court makes the following

### Conclusion of Law

"1. That this suit was prematurely brought and should be dismissed."

 The principal question is whether the judgment is supported by substantial evidence. The property in question is known as Hagerman Locker Plant and was operated by appellant. He secured a loan thereon of $9,000 from Amicable Life Insurance Company. The plant was beset with financial difficulties and he was unable to meet the interest on the note and operational expenses. Foreclosure proceedings were instituted and dismissed upon condition the plant be sold or at least placed in the hands of successful operators. Faced with this situation, on July 10, 1950, appellant and wife entered into an agreement with the mortgagors, R. O. Ables and Letha Ables, their son-in-law and daughter respectively, by which they conveyed the plant to them for a consideration of $15,000 which included the assumption of the amount due the Amicable Life Insurance Company. The Ables gave appellant a note secured by a second mortgage for a balance of $6147.71.

On July 13, 1950, the mortgagors conveyed an undivided one-half interest in the plant to appellees. Subsequently, through divers conveyances appellees acquired the remaining one-half interest. In each of the conveyances, the property was taken by them subject to the terms of the existing mortgages. Prior to the time appellees acquired the property it was operated by the Ables. As previously stated the plant was not a going concern. Not only was it burdened financially but there was confusion and misunderstanding between appellant and his son-in-law Ables. Consequently, before appellees acquired the full title, they required a statement from appellant as to the amount paid by the mortgagors. The statement is as follows:

"Dated 18th January 1951

"I the undersigned acknowledge receipt of $1168.33—Eleven Hundred Sixty Eight Dollars and thirty three

cents from Richard Ables to apply on Second Mortgage against Hagerman Locker Plant held by me.

> "Signed: Wm. Solomon

"Witness—M. E. Barberousse

"Witness—Richard O. Ables"

There was a conflict in the evidence as to this credit. Appellant maintains that the Ables owed him for rent, groceries, etc., and that he applied the payments on their account. On the other hand appellee, Steve W. Mason, and the witness Barberousse, testified that the credit was to be applied on the amount secured by the second mortgage. We think this evidence is substantial. The receipt itself is evidence of the most satisfactory character and makes a prima facie case of payment. Cerf & Co. v. Badaraco, 6 N.M. 214, 27 P. 504; Chesher v. Shafter Lake Clay Co., 45 N.M. 419, 115 P.2d 636; Gibbons v. Potter, 30 N.J.Eq. 204, 205; Fuller v. Crittenden, 9 Conn. 401, 23 Am.Dec. 364; New York Life Ins. Co. v. Seifris, 3 Cir., 46 F.2d 391; Reid v. Reid, 13 N.C. 247, 18 Am.Dec. 570.

■ It is argued that appellee had defaulted in the payment of insurance premiums in amount of $188.81. While appellant was the owner he had previously purchased two insurance policies covering the premises, one expiring October 11, 1950, the other expiring May 8, 1951, and failure to make refund of the advanced premiums is the basis of this claim. In the sales contract between appellant and the Ables there is a provision relating to this insurance, as follows: "That the parties hereto agree that the insurance now in full force and effect on the premises described hereinabove shall remain with the same agencies and the same companies during the duration of said policies." The policies were in existence when the Ables purchased the property and were made as a protection to the first mortgagee. Demand was made upon appellees for the payment of these premiums. Obviously, the demand was for reimbursement. The most appellant is entitled to is judgment for the amount of the advanced premiums. Clearly, there was no default in the payment of premiums.

■ The point is made that the receipt for $1,168.33 signed by appellant must be construed against appellees since appellee Steve W. Mason dictated the instrument. There is no merit to this contention. This rule is applicable only where the instrument is of doubtful meaning, indefinite and ambiguous. Crecente v. Vernier, 53 N.M. 188, 204 P.2d 785; Peterson v. Modern Brotherhood of America, 125 Iowa 562, 101 N.W. 289, 67 L.R.A. 631; Tischendorf v. Lynn Mutual Fire Insurance Co., 190 Wis. 33, 208 N.W. 917, 45 A.L.R. 856. True, appellant testified that he signed the instrument not knowing its contents; however, the evidence is clear that the payments were to be credited on the amount secured by the second mortgage. It is logical that a pur-

chaser would ascertain the balance due and the receipt verifies it. This was the view of the trial court and we think his conclusion was fully warranted.

The judgment will be affirmed and it is so ordered.

McGHEE, C. J., and SADLER, LUJAN and SEYMOUR, JJ., concur.